docket 25-2009. Council good morning your honors and may it please the court. Chris Keiser for appellants. I'd like to try to reserve two minutes for rebuttal. My clients are New Mexico landowners who hold title to the beds of non navigable streams running through their land. For decades, they had the right to exclude the public from walking and waiting on those stream beds. Until 2022, all three branches of New Mexico landowners had the right to do so. I'm going to call on Chris Keiser to speak on this issue. My client, Mr. Briones, even had signs from the Game Commission and the Department of Game and Fish issued to that effect only a few years ago. The defendants here, the commissioners, the director of the Department of Game and Fish, and the Attorney General all flipped their position only after the New Mexico Supreme Court for the first time in state history declared that the state constitution's public water clause guarantees public access to walk and wait on these privately owned stream beds. After that decision, the state officials began cracking down on property owners who still wish to exercise their right to exclude. The Attorney General has already sued two of my clients and threatens more action while the commission and the department have warned stream bed owners not to display even the signs that the agencies themselves issued only a few short years ago. Is it cracking down or just enforcing the law? Your Honor, that's precisely what they're doing. They're enforcing state law. And that's exactly why this is a classic Ex Parte Young case. The stream bed owners allege that New Mexico has taken their right to exclude by essentially defining it out of existence. Because New Mexico can't be sued for inverse condemnation in federal court, the owners sued the officials who enforce state law through Ex Parte Young. They've already enforced the law. They threaten to enforce more in the future. This is exactly the function of Ex Parte Young. When state officials are enforcing state law in such a way that it violates a citizen's federal constitutional rights, the citizen may obtain prospective injunctive relief to stop further violations. And that's all we seek in this case. I think the... What is the federal constitutional right that we could announce in view of the New Mexico Supreme Court's ruling on which I think it's worth a final? The New Mexico Supreme Court's ruling, Your Honor, is a final ruling as a matter of state law. And we don't contest that Adobe Whitewater is a pronouncement of state law. This court, of course, has no power to overrule Adobe Whitewater. But this is just like any Ex Parte Young case. When a state legislature passes a law and someone challenges it under Ex Parte Young, the enforcement of that law, and the federal court finds that those rights were violated, it doesn't go back and then cross out the state law or overrule it. It just says you can't enforce that law against these parties. It sounds like you're saying there's a higher right than the right that New Mexico has recognized, a higher federal right. What is that right? And what's its source, more importantly? The right to exclude is the right, as the Supreme Court has most recently recognized in Cedar Point Nursery. The right to exclude is one of the most fundamental property rights. And in here, essentially what the state officials are doing is enforcing a public easement on these private stream beds. It's exactly what happened in Cedar Point, where the Supreme Court held that it was a taking of the right to exclude to require the growers, in that case, to allow union organizers onto their property 120 days per year. It's exactly the same thing. You described the right as the ownership interest, but the right is not to have it taken without just compensation, right? That's the constitutional issue. That's correct. So it's the right to exclude, which cannot be taken without just compensation. And just as in Cedar Point, where— It's not the right to exclude. It's that if you have a right, it can't be taken without compensation, whatever your right is. Correct, Your Honor. Just as in Cedar Point, when the growers there— You got a decision from the state Supreme Court saying that you never had such a right. And that means nothing was taken, so there would be no need for just compensation. Are you asking us to overrule the state of New Mexico Supreme Court decision on what the New Mexico Constitution means? Of course not, Your Honor. You have no power to do that. What we're asking for is to understand that a state cannot simply define a right that has existed for years out of existence, whether it's through a judicial proclamation, through a legislation, or through executive action like in Cedar Point. And so, just the— You're ignoring what I'm saying. They didn't do that. What they said was it never existed the way you're defining it, and that we never even said that in our prior decision. I do think you have standing. But in order for you to have a cognizable claim, I don't know what we can do if the state Supreme Court has held that the right you claim has been taken without just compensation. You never have, ever, in the state of New Mexico. Your Honor, this is why the Supreme Court in Cedar Point and Tyler v. Henneman County has emphasized that the states are not the final expositor of property rights. And it's asked lower courts to look to things like the tradition of the right being recognized in the past. And here we have exactly that. Our complaint alleges decades of proclamations from the Department of Game and Fish and the Commission, the Game Commission, recognizing the right to exclude. Then there's a 2015 statute that recognizes the right to exclude and a 2018 administrative rule. Counsel, can I pick up the thread with Tyler in particular, that case? Sure. The Supreme Court said, I think you correctly noted, that state law is not the final word on property rights. And one of the things you look to is historical practice. Even though here, Adobe Whitewater says, well, they never had the right, we're just now making explicit what the Constitution's always said, but that right never existed. Is it your argument, though, that the historical practice within the state that always did recognize a right the Supreme Court said never existed is enough under Tyler to conclude here that, you know, when we look beyond just Adobe Whitewater, there may be other sources that give rise to a takings claim? Yes, Your Honor. And one of those sources is the Supreme Court, the New Mexico Supreme Court's decision in Red River Valley, which I recognize that the Adobe Whitewater court just viewed themselves as applying Red River Valley. But if you look at the Red River Valley opinion, and it's the reason why the department and the commission had taken their position on the right to exclude for all those years, because Red River Valley is a decision about public water, not about the land beneath the water. And in fact, when it denied the rehearing motion, it was careful to distinguish between those things and said that it's not a trespass to fish from a boat above the owner of the stream when the stream beds are privately owned. But it would be a trespass to walk and wait. Now, they didn't explicitly say it would be a trespass to walk and wait, but that's the implication there. And that's exactly what the executive agencies picked up on in issuing their proclamations. And then that was made explicit in 2015 via legislation and in 2018 via the rule that allowed the certification and the signage to be issued. So by 2022, it was clear that the political branches understood in New Mexico that there was a right to exclude. And Adobe Whitewater, of course, held that it didn't commit that, it didn't change the law in such a manner to commit a taking, but the state Supreme Court is not the final word on that. Federal courts are the final word on whether a taking has occurred. And so here, you know, my clients were not parties to Adobe Whitewater. After 2022, they have experienced these enforcement actions, and that is what gives us standing. And then it's the enforcement actions themselves. I think a lot of the argument sort of misunderstands what Young actually does. The source of the state law doesn't actually matter. It could be an executive proclamation, a rule like in Cedar Point, it could be a statute like in Young itself, and it could be the state constitution or a judicial interpretation of the constitution. In any event, it's the enforcement that is what matters. And here, my clients only seek to restrain the enforcement of what is now considered to be New Mexico law. And, of course, New Mexico, if they want to have these public rights, they can have them. And as Judge McHugh pointed out, they could pay just compensation for these rights. Just as Justice Breyer pointed out in his dissent in Cedar Point, that injunction could be dissolved if the state decides it wants to pay for the rights that it took. But that hasn't happened, and so that is why, under Nick, we're entitled to a federal forum, and the only remedy we could get in a federal forum is prospective injunctive relief, and that's why we sought that in this case. So I want to move on to the sovereign immunity question. I think that it's kind of intertwined with the standing in Ex Parte Young, but I think the district court on sovereign immunity, it assumed that the state officials would not be able to comply with an injunction, but that's just wrong under Ex Parte Young. The state officials would have to comply if there is an injunction issued, and therefore, there's no way that this case could result in draining the state treasury, and it's just a classic Ex Parte Young case, and nor do we have to go to— Well, I'm just saying the state could choose, right? The state could choose to continue to enforce it and compensate. That's correct. But they wouldn't have to. That's correct. Sorry. I'm sorry, Judge McHugh. I'm sorry, but if the state enforcers would have no right to enforce a law that's been struck down as unconstitutional by the federal court? That's correct, Your Honor. That's correct, Your Honor. So there's no way in which the relief that we seek is not prospective, and that's why it is properly sought under Ex Parte Young. And the argument the district court and my friend on the other side make about having to go to state court first seems to be—I mean, they cite Williamson County, which is a case that's been overruled. There are cases that's like this court's case in Williams that say that if retrospective relief is being sought and the state courts are open to hearing that case, then you do have to go to state court. But that is not a case about prospective relief under Ex Parte Young. That's just a garden variety sovereign immunity case. And so here, we don't have to go to state court. We have a right to a federal forum under Nick. I was a little confused by those cases because it's a little hard to tell in some of them whether you're saying you have a requirement to exhaust, essentially, in the state court or if it's just a decision saying that equitable relief is not available if you have an adequate remedy in law. And I think it matters here because one is jurisdictional and one is not. Yes, Your Honor. You don't have to— Am I confused? You don't have to exhaust because Nick overruled Williamson County. There's no more state litigation requirement. As far as the other—I'm sorry, what was the second part of your question? I just wanted to make sure. Well, that, you know, if you're looking for equitable relief, typically you're not entitled to equitable relief if you have an adequate remedy in law. Sure. Yeah, so the reason we're entitled to equitable relief is the same reason that the growers in Cedar Point were entitled to an injunction and ultimately did get one because they were suing state officials who can't be sued for inverse condemnation. And that's why they're entitled to equitable relief. I'd like to try to reserve— Counsel, before you sit down, you're invoking Ex parte Young, and the primary justification I hear for it is your prayer for relief in which you are asking for permanent injunctions. But what about the declaratory relief you seek where you want the district court to declare that defendants essentially have committed a per se taking of plaintiff's right to exclude? If that is declared, is there any other option they have at that point other than to provide just compensation? Yes, Your Honor. They can just continue to not enforce the law against my clients, and then it wouldn't be a taking because we don't have a right to any retrospective relief. We only have a right to prospective relief, and that's all we saw. So you don't think it makes any difference whether it's a declaration or an injunction? I think the declaratory relief goes hand in hand with the injunction, but I don't think it makes a difference as far as that goes, no. I'd like to try to reserve my remaining 45 seconds. Thank you. Good morning, Your Honors. May it please the Court. I'm James Grayson. I represent the appellees in this case. The New Mexico Supreme Court rejected the same takings argument that is being made by the appellants in this case because, quote, any title by intervenors was already subject to the public's easement in public waters. Today, we merely clarify the scope of that easement by making explicit what was already implicit in Red River. The fundamental flaw in the plaintiff's claim in this case is that there is no underlying federal right that is being asserted. In New Mexico, the public owns the water, and there is not and there has never been a right to exclude the public from enjoying recreation and fishing on those waters. In Adobe, is what the Court's talking about incidental use of, say, the banks or touching the bottom? You don't take the position that people can just walk over private property to get to these waters, do you? No, Your Honor. And, in fact, the New Mexico Supreme Court was very clear that that cannot be done. The New Mexico Supreme Court was clear about that in Red River as well. That was the trespassing that the New Mexico Supreme Court mentioned in 1945. It was crossing private property to get to the water. And in Red River, the Court was talking about a lake, and the lake could be accessed by other means. People didn't have to go through the plaintiff's property in that case in order to access the lake. There was a separate dock. And that also explains why the Court didn't address the beds in the banks. That was not an issue in that case because it was a lake and it was accessed by boats, and the fishing was done by boat. What the New Mexico Supreme Court determined is essentially it's not a very large leap to say that an easement must provide access in order to use the land for the purpose of the easement. And here the easement, the purpose of the easement, is recreation and fishing. And so the New Mexico Supreme Court went no further than to say the public has to have access to the water in order to have recreation and fishing. Meaning you can stand waist-deep with your waders and cast your line. That's correct, Your Honor. And the Court said that has to be only use as reasonably necessary, and was very careful to implement a balance between private property rights and trespass and the public's right to water. Counsel, you begin. What do we do with the fact that... I'm sorry. No, go ahead, Judge McHugh. What do we do with the fact that it seems like whatever Adobe says Red River meant, it looks like that agencies in the state may have interpreted it more broadly than the Supreme Court now says it intended. What do we do with the fact that there were regulations in place and there were fines that were approved and all of that in terms of the property owner's interest in the land? Yes, Your Honor, I think that's a very important question. And I think the New Mexico Supreme Court did address that in Adobe-Whitewater, both in saying that the administrative regulations were ultra-virus and unconstitutional under the New Mexico Constitution, and in saying that they're holding in Red River. And the Court, there was an extensive analysis of the holding in Red River and the discussion of dissents in the Colorado case that was relied upon by the New Mexico Supreme Court in 1945 in order to reach the conclusion that it was implicit in that holding in Red River that the public could access the banks and the beds to the extent reasonably necessary. So that was always the law in New Mexico. It was misinterpreted by the administrative agency in a manner that was ultra-virus because the New Mexico Supreme Court also said that the statute that was passed in 2015 was interpreted in a constitutional manner to mean someone could not cross land and then wade and walk in the water. They had to walk or wade from a public access point. And that is the trespassory right that landowners retain. Counsel, you began your presentation by saying that they're invoking the right that they never had. But why isn't that a merits question? Your Honor, I think it's both a merits question and a standing question because they have to plausibly allege a right in order to establish standing, and they haven't done so in this case. So whether the Court decides that as a matter of standing or whether it decides that as a matter of 12b-6, it's the same. Well, but the argument as I understand it is that even though Adobe-Whitewater may say that they have no right to exclude this public easement access, but we don't just look to state law under Tyler v. Hennepin County. And in fact, historical practice, federal court precedents also inform this decision as well. So I read your response to obviously and rightfully rely heavily upon Adobe-Whitewater. But what about other sources of law that a district court may look at to give rise to a property right that could be subject to a takings claim? That's the problem, Your Honor, with the assertion here that state law is not the only source of a property right under the takings clause is because they've identified no other source. They haven't identified riparian water rights. They haven't identified federal property rights. Those were both dealt with in Red River and rejected. There is only a state water right. And what they're claiming is that the New Mexico Supreme Court misinterpreted that state water right. And so this is the problem that the Seventh Circuit confronted in the Pavlok case as well, because the Indiana Supreme Court in that case had said since 1816, the land has been the state's up to the high water mark of Lake Michigan. And it was a retroactive assessment of state law. And the Seventh Circuit said there's no way for us to grant relief without saying that the state Supreme Court was wrong on a matter of state law. Right. In that case, the Seventh Circuit decided on standing, didn't they? They did, Your Honor. They did. But it's very different, because in that case, the only injury they argued was the loss of these inches of property. Here, the injury that's asserted is the fear of prosecution. And it seems to me they clearly have stated an injury for standing purposes. You may have a good merits question, so I guess I'm following on Judge Federico's argument. But with regard to injury for purposes of standing, isn't it true that if you have a realistic risk of being prosecuted for violating the law, that you've got standing? Your Honor, the realistic prospect of prosecution or enforcement relates to the right. So the right underlies that. There has to be a plausible allegation of a right. And that's why the Seventh Circuit said non-enforcement will not change the content of the underlying law itself. So non-enforcement... In the Seventh Circuit case, there was no risk of enforcement that was argued as the injury for purposes of standing. The only injury they argued for purposes of standing was the loss of that length.  And Your Honor, I... Here, it's made a separate injury. I guess I think they have standing, and I think it's a merits question. And Your Honor, like I said a few minutes ago, I think the court could decide this under 12b-6, because there are no facts alleged that would support a state source of the property right in this case. They've relied on administrative regulations. But the Game Commission and the Department of Game and Fish do not decide property rights. They have no authority to declare that these individuals own or have the right to exclude property owners from their property. So it's not a reasonable expectation on the property owner's part. This was not a matter that had been judicially decided until 2022. And at that point, the New Mexico Supreme Court decided as a matter of state law that that had always been the law in the state. And there's simply no grounds in the complaint to go behind that assessment, whether it's through history, whether it's through traditional property law. And in fact, the New Mexico Supreme Court's holding is actually a proper application of a principle articulated in Cedar Point itself. In Cedar Point, Chief Justice Roberts said, many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights. The government does not take a property interest when it merely asserts a preexisting limitation upon a landowner's right. And that's exactly what happened here. Now, this is not the Ipse Dixit that is alleged from Tyler or from Webb's Famous Pharmacies. In both of those cases, there was private property recognized by the state, and there was the state then changing the law to say that the property would be treated as public for a particular reason. In Webb's Famous Pharmacies, it was because the money was held by the court until it was dispersed, and it was considered public money during that time. In Tyler, it was because a law was passed saying that arrears in property tax could allow the state to take the property, even in excess of those taxes. In both of those situations, there was an existing property right that was changed. And in both of those cases, the Supreme Court said there was an appropriation by the state. Here, there was no appropriation because there was never a right that existed. And an appropriation is what is necessary to allege a takings. Counsel, can I pivot to the sovereign immunity part of this case? You, in your response brief, as I recall, relied upon Williams, a case that talked about sovereign immunity's application in a takings case. But does that case speak at all to the exceptions to sovereign immunity like the one invoked here? Your Honor, reading Williams, it does appear to be a damages case. It's unclear how Williams applies to an Ex parte Young situation. There was a 28-J letter that was submitted with an unpublished opinion from this court, Teva Pharmaceuticals, that seems to indicate that Williams does not apply to Ex parte Young. I think that's a complicated question. And I think that's not something that's been substantially developed in the law at this point, based on the change in the law affected by the Supreme Court. And so I think there are easier paths in this case toward affirmance. And essentially, that's what the Seventh Circuit said in Padlock as well, is that there are complicated questions with sovereign immunity, especially with Coeur d'Alene. I know the appellants here have suggested that Coeur d'Alene is only about cases with two sovereigns. Reading Coeur d'Alene, it never says that. The only place it talks about two sovereigns is to say that the court had rejected the notion that the 11th Amendment did not apply to suits between two sovereigns. But Coeur d'Alene is quite different. It essentially would divest the state of any ownership over the law, land at all, and any right to regulate it, right? Your Honor, that's correct. It is an ownership case. In this case, however, what we're talking about is public water. And there is a sovereign interest by the state of New Mexico in public water. It is held in public trust. And that is something that was discussed in Coeur d'Alene. And in fact, Coeur d'Alene was about one lake in Idaho. This case is about all of the streams in New Mexico. All of the streams in New Mexico are public and it is the state's sovereign interest to act in the public trust to protect the public's access to that water for recreation and for fishing. So this is, Your Honor, one of those special circumstances that does fit that Coeur d'Alene mold. But like I said, as in Pavlov, the court has easier paths. And standing is one of those paths. You mentioned the easier path. From the state's perspective, what's the easiest path this court could take to affirmance? Your Honor, I think it's actually any component of standing. I think all components of standing require the fundamental prerequisite of a plausible assertion of a right. And if that doesn't exist, there's no injury in fact. There's no causation. There's no redressability for the reasons we discussed in the brief. I did want to say on the two sovereign point for Coeur d'Alene that the appellants relied on Stewart. And I wanted to clarify how the Supreme Court characterized Coeur d'Alene and Stewart. Because what the appellants say is that the quiet title language from Coeur d'Alene is dicta. But in Stewart, the court said that we determined that the suit was the functional equivalent of a quiet title suit against Idaho. And it would extinguish the state's control over a vast reach of lands and waters, long deemed by the state to be an integral part of its territory. Your Honors, the streams in New Mexico are an integral part of the state's sovereignty, and the state asks this court to affirm. Thank you, Counsel. Thank you, Your Honors. I only have 42 seconds, so I just want to make one quick point about Red River Valley and just in general about Tyler and sources of state law. There are many different sources of state law, and Red River Valley was merely one of them. But Red River Valley was clear that it interpreted the public water clause to allow fishing in the public water, which the public water has always been public. But it also clarified that no person has the right to approach public water through private property or to fish in public water while on private property, which would be the stream beds here, without consent of the owner. And that's exactly where the executive and legislative got their positions from. It didn't come out of nowhere. Thank you, Your Honors. I ask the court to reverse. Thank you, Counsel, for your helpful and excellent arguments. The court, you are excused, and the case submitted.